D. B. MAXSON, Appellee, v. MANSFIELD CRESS, Appellant.

WATERS AND WATERCOURSES: Natural Course of Drainage—
1  Evidence. Evidence held to justify the decree of the trial court
as to the course of natural drainage.

ARBITRATION AND AWARD: Oral Agreement for Oral Award.
2  An oral agreement for an oral award is valid.

FRAUDS, STATUTE OF: Oral Agreement in re Drainage. An oral
3  agreement to arbitrate a dispute as to the course of natural
drainage over lands is not within the statute of frauds.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

JULY 6, 1920.

ACTION in equity to restrain the defendant from ob-
structing a natural waterway. Cross-petition by defend-
ant, also praying an injunction. The material 'facts are
stated in the opinion. The court dismissed defendant's
cross-petition, and caused a decree to be entered in favor
of plaintiff, substantially as prayed. Defendant appeals.—
*Affirmed.*

*Redmond & Stewart,* for appellant.

*Voris & Haas,* for appellee.

STEVENS, J.—I. Plaintiff is the owner of the N½ and
the SE¼ of the NW¼, and the defendant of the
SW¼ of the NW¼ of Section 31, Township 85, Range
7. He alleges in his petition that, during
all of the time referred to therein, and for
many years prior to his ownership of the
lands described, there was and is a natural

swale or watercourse, extending from a point near the southeast corner of plaintiff's land in a northwesterly direction to a point near the northeast corner of defendant's land, which it enters a short distance south of said corner, and thence, extending in a northwest, westerly, and southwesterly course, crosses defendant's land; that the said swale or watercourse serves as an outlet for large quantities of surface water, accumulating thereon and in the vicinity thereof; that the defendant has placed an obstruction or dam composed of rocks, dirt, and debris of various kinds across said waterway on his 40, near the northeast corner, thereby diverting and causing the surface waters to flow to the north and northwest over the lands of plaintiff, to his great damage. In a second count of his petition, he alleges that, in 1913, for the purpose of permanently settling and adjusting all controversy between the parties as to the natural course of drainage, he and defendant orally selected, and agreed to submit the question to, five farmers residing in the vicinity; that the parties named as arbitrators subsequently viewed the premises, and unanimously agreed and averred that the natural course of drainage was across the lands of defendant, substantially as alleged in Count 1 of plaintiff's petition; and that, notwithstanding said agreement and award, the defendant persists in obstructing said waterway by said dam, as above stated. Plaintiff prays that the defendant be permanently enjoined from interfering in any way with the natural flowage of surface water across his premises, and that he be required to remove the dam, and for damages.

Defendant, for answer, after admitting the formal allegations of plaintiff's petition, denied that a swale or natural watercourse extends from the lands of plaintiff on and across the southwest quarter of Section 31, and avers the fact to be that the natural course of drainage is to the northwest, onto the lands of plaintiff; that one Wallace Thomas, who was then the owner of said northwest quar-

ter, more than 50 years before this controversy arose, caused a ditch, on the south side of the northwest 40 thereof, and for a short distance north and south from the northeast corner of defendant's tract, and intersecting therewith, to be constructed, for the purpose of carrying away the surface water coming from the southeast; and that said system of drainage was continuously maintained thereafter, until the plaintiff permitted the said ditches to become filled and obstructed with earth and debris, causing the water to flow upon the lands of defendant; that the said ditches became an easement appurtenant to defendant's land, and an easement on the plaintiff's land; and that the defendant is entitled to have the same opened and maintained; and, by way of cross-petition, prays that plaintiff be enjoined from allowing same to become obstructed, and that he be peremptorily ordered to remove all such obstructions therefrom, and to keep said alleged drainage system open. Defendant further admitted that an attempt was made to arbitrate the differences between the parties, but denies that the arbitrators selected agreed or made an award, either orally or in writing.

The court found that there was a natural watercourse or swale across the land of defendant, and ordered him to remove the obstruction placed therein, and permanently enjoined him from in any way interfering with the flowage of surface water in the said natural waterway, and dismissed his cross-petition.

It is conceded that the surface waters accumulating thereon and from a somewhat extensive area to the southeast flow, in the natural course of drainage, across plaintiff's southeast 40 toward the northwest; that there is a ditch of small dimensions, extending from the southeast corner thereof the greater part of the way east and west across the south side of the northwest 40, intersecting with a smaller ditch, situated on the southeast 40, extending a few rods south along the east line of defendant's 40, all located substantially as the alleged Thomas ditch; that, about 12 years prior to the trial, the defendant caused a

quantity of rock to be deposited across a depression at a point about 15 rods south and 3 or 4 rods west of the northeast corner of his tract; and that a portion of the rock was removed by him some time after the alleged submission of the controversy between the parties to arbitration.

William Thomas, called by the defendant, testified that he and Thomas Biggs, by the use of a team and scraper, in 1866 excavated a ditch which is designated herein as the Thomas ditch, to distinguish it from a later ditch, which we have designated the Dutton ditch. In this he is corroborated by William Andrews, who, at the time, resided with his mother on the north 8 acres of the southwest 40.

W. R. Dutton, whose father, at one time, owned the Maxson land, testified that he lived thereon for 36 years before plaintiff purchased the land in 1912, and that there was no ditch on the south side of the northwest 40, or east of defendant's tract on the southeast 40, prior to about 1907, when the present ditches were excavated by him; and the testimony of two other men who were present upon the trial corroborates Dutton in all essential details. All of them testified that they excavated the east and west ditch with a 4-horse road grader, and that no ditches were previously visible in that vicinity.

David Newman, another witness, testified that he had lived near the lands in question for 30 years; that he worked for Mr. Dutton about 18 years ago on the Maxson land; and that no ditches were at that time observable thereon.

The defendant and other members of his father's family testified that the ditches were dug as claimed by Thomas, and continuously thereafter kept open. According to the testimony of plaintiff, the purpose of digging the ditch on the south side of the northwest 40, which was done with the road grader, was to construct a road for his private use.

It further appears without dispute in the evidence that a gate opening from the southeast quarter onto the northeast quarter of plaintiff's tract at the northwest corner was maintained for a great many years, and later removed, a short distance east. It is claimed by the older witnesses for defendant that the north and south ditch passed under the gate, and intersected with the east and west ditch, through which the surface waters flowed to the northwest, and finally to the southwest, to the highway along the west side of defendant's 40. Four of the five alleged arbitrators were called on behalf of the plaintiff, and testified that they viewed the premises, carefully observing the elevations of the land and the natural course of drainage, and that it was the unanimous conclusion of the arbitrators that it was across the northeast corner of defendant's tract, near his north line, running thence westerly in a southwesterly direction to said highway. It appears to be conceded, also, that, in time of heavy freshets, the water passing over defendant's land would, to some extent, spread out to the north, over the northwest 40.

The general surface of the lands in question is substantially level, and we are not aided in our investigation by elevations. Defendant places considerable emphasis upon the alleged Thomas ditch, dug more than 50 years ago. No witness was called by plaintiff to deny that a ditch was dug, as claimed by him; but there is evidence that, for more than 36 years preceding the trial, no such ditch was visible; and it is established, without substantial conflict in the evidence, that one Dutton, whose father owned the Maxson land, excavated the present ditch on the south side of the northwest 40, with a 4-horse road grader. It is conceded by him that he subsequently cleaned the ditch out, on two or more occasions. Of course, the evidence of plaintiff's witnesses that no ditch was visible on the premises until one was placed there by Dutton, 12 or 13 years ago, does not necessarily conflict

with the testimony of Thomas and other witnesses who corroborate him as to the existence of the ditches referred to by him. It does, however, tend to show that, for many years prior to the Dutton ditch, the alleged system was not in working condition. It appears that the rock dam complained of was erected about the time the ditches were excavated by Dutton, whether immediately before or after is not shown. The north side of defendant's 40 is in pasture, and it is conceded that there is a depression, fully sodded over, extending west for several rods from the dam. According to the testimony of defendant, the rock and earth were placed there for the purpose of filling a hole, and keeping the water from going west in the depression, or dead furrow, as claimed by plaintiff. Four of the five disinterested parties who were chosen to arbitrate the controversy found, as arbitrators, and gave it as their opinion as witnesses, that the natural course of flowage was across the northeast corner of defendant's tract; thence in a westerly and southwesterly direction across the same to a highway on the west side thereof. Numerous witnesses called by defendant testified that the surface water formerly ran across the northeast corner of his 40, but that it continued in the same direction onto plaintiff's land, and finally to the southwest, across defendant's land, a short distance east of the highway. Manifestly, if the Thomas ditches ever existed, they were placed there for the purpose of preventing the surface water from crossing the northeast corner of defendant's tract, and to carry it around the corner thereof, and west across plaintiff's land. It is impossible to determine from the evidence how long this condition continued, but it appears to us from the evidence that it must have ceased to exist many years before the Dutton ditches were dug, with the digging of which defendant apparently had nothing to do.

It is difficult to determine from the conflicting evidence the exact course of drainage at the point in question; and, while we are left in some doubt thereby, we are disposed to follow the view of the trial court. The ditches, and also

the depression, are very shallow, and indicate that the course of the water may be easily diverted to the west or northwest. We have not attempted to set out all of the facts on either side deemed material by counsel, but have only called attention to a few of the more important matters.

II. It is earnestly argued by counsel for appellant that the evidence wholly fails to establish a completed arbitration of the controversy, for the reason that no award in writing was made or signed by the arbitrators. That there was an oral agreement to submit the matter to arbitration is conceded, but defendant claims that the understanding and agreement were that the award should be in writing, so that it could be recorded. He so testified. Plaintiff, however, denied that anything was said about a written award, and both parties concede that the finding of the arbitrators was to be final, conclusive, and binding upon them.

2. ARBITRATION AND AWARD: oral agreement for oral award.

The five parties selected as arbitrators were mutually agreed upon, and all of them appear to have been notified by defendant of their selection, and he thought the premises were visited and inspected by them for the purpose of settling the controversy. According to the testimony of the arbitrators, nothing was said by them to the defendant about an award in writing. They all agree, however, that, at the suggestion of the other members, Mr. Deekin, after he went home, prepared a brief finding, to which he attached a rough sketch, indicating the natural course of drainage as found, which corresponds in all material respects with the contention of plaintiff. This finding was signed by two of the arbitrators only; but four of them testified that the agreement was unanimous, and that the sketch offered in evidence was in accordance therewith. The remaining arbitrator testified that no agreement was reached, and that they were divided three to two in favor of the defendant. The arbitrators, while on the premises, arranged to meet, on the following day, at a designated

place, and go to a near-by village, for the purpose of signing the award, but, due to a misunderstanding, one of them did not appear at the place agreed upon, and nothing further was done about a written award. The arrangement for an award in writing, as stated, was made at the suggestion of one of the arbitrators, and was not based upon the alleged agreement testified to by defendant.

The record is not clear as to how or when the parties were notified of the conclusion of the arbitrators, but it is manifest that they soon learned thereof.

It is true that the proceedings to settle the controversy by arbitration were informal, but they seem to be within our holding in *Skrable v. Pryne*, 93 Iowa 691. The agreement for an award in writing, testified to by plaintiff, is not, we think, sustained by the evidence. The parties had a right to agree orally to submit their differences to others for settlement, and to bind themselves irrevocably thereby, without the formality of a written award. This they apparently did. Some claim is made by counsel for appellant that the alleged oral agreement to arbitrate is void, under the statute of frauds. This contention cannot be sustained. The agreement did not involve a question of title, or interest in real estate, but went no further than to settle a controversy as to the natural course of surface water. The decree of the court required defendant to remove the dam or obstruction referred to, and not to interfere in any way with the natural flowage of surface water. The decree is in harmony with the facts, as disclosed by the record, and we see no reason for interference therewith. It is, therefore,—*Affirmed.*

3. FRAUDS, STATUTE OF: oral agreement *in re* drainage.

WEAVER, C. J., LADD and GAYNOR, JJ., concur.